**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| Brian C. Kerzetski,<br><br>Plaintiff<br><br>v.<br><br>Jeremy Bean, et al.,<br><br>Defendants | Case No.: 2:25-cv-00979-APG-EJY<br><br>**Order Granting Motion for Leave to Amend and Screening First Amended Complaint**<br><br>[ECF No. 8] |

Nevada prisoner Brian Kerzetski brings this civil-rights lawsuit to redress constitutional violations that he allegedly suffered while incarcerated at High Desert State Prison (HDSP). In screening Kerzetski's original complaint, I dismissed his First Amendment access-to-courts and retaliation claims with leave to amend by January 6, 2026, and dismissed his other claims either with prejudice or without leave to amend in this action. ECF No. 7. I did not give Kerzetski leave to add new claims. *Id.* at 8. But before the deadline expired, Kerzetski moved under Federal Rule of Civil Procedure 15(a) and LR 15-1 for leave to file an amended complaint adding, among other things, new claims. ECF No. 8. I find that leave to amend is merited, so I grant Kerzetski's motion for that relief and now screen his amended civil-rights complaint.

## I. SCREENING STANDARD

Federal courts must conduct a preliminary screening in any case in which an incarcerated person seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See id.*

§ 1915A(b)(1), (2). *Pro se* pleadings, however, must be liberally construed. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

In addition to the screening requirements under § 1915A, the Prison Litigation Reform Act requires a federal court to dismiss an incarcerated person's claim if "the allegation of poverty is untrue" or if the action is "frivolous or malicious;" "fails to state a claim on which relief may be granted;" or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). Dismissal of a complaint for failure to state a claim upon which relief can be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the court applies the same standard under § 1915 when reviewing the adequacy of a complaint or an amended complaint. When a court dismisses a complaint under § 1915(e), the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 723 (9th Cir. 2000). Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle them to relief. *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999). In making this determination, the court takes as true all allegations of material fact stated in the complaint and construes them in the light most favorable to the plaintiff. *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996). Allegations of a *pro se* complainant are held to less stringent

standards than formal pleadings drafted by lawyers. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980). While the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must provide more than mere labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A formulaic recitation of the elements of a cause of action is insufficient. *Id*.

A reviewing court should "begin by identifying pleadings [allegations] that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

All or part of a complaint filed by an incarcerated person may therefore be dismissed *sua sponte* if the claims lack an arguable basis either in law or in fact. This includes claims based on legal conclusions that are untenable (e.g., claims against defendants who are immune from suit or claims of infringement of a legal interest which clearly does not exist), as well as claims based on fanciful factual allegations (e.g., fantastic or delusional scenarios). *See Neitzke v. Williams*, 490 U.S. 319, 327–28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

## II. SCREENING OF FIRST AMENDED COMPLAINT

### A. Factual allegations

The events of the First Amended Complaint happened while Kerzetksi was incarcerated at HDSP. ECF No. 8-1. Over a nearly two-year span, he submitted roughly 45 grievances that "complied" with the prison's grievance procedures "in order to exercise his constitutional right

to protect wrongs done to him and petition for relief." Grievance coordinator S. Quillmann and associate wardens Frank Dreesen, William Kuloloia, and Glenn Fowler rejected many of Kerzetski's informal grievances, nearly all of his first-level grievances, and all his second-level grievances for "arbitrary, capricious, irrelevant, incoherent, inapplicable, or fraudulent reasons[,]" including that the grievance raised more than one issue, did not factually demonstrate harm or loss, did not seek an action or remedy, was filed on behalf of another inmate, lacked proper attachments, exceeded the one-grievance-per-week maximum, appealed to higher level before acceptance of grievance at lower level, raises duplicate issues, modifies the remedy sought, was rejected multiple times, and failed to correct noticed deficiencies. The rejections happened "because Kerzetski was attempting to express his complaints and bring the issues to the courts." The rejections did not advance a legitimate correctional goal, served to chill Kerzetski's exercise of his First Amendment activities, and would chill those activities of a normal person.

Around May 7, 2024, Kerzetski met with caseworker Jennifer Foronda who initiated a call with Quillmann to discuss grievance procedures. Over speakerphone, Quillmann told Kerzetski that he "clearly know[s] how to write a grievance" but that staff and administrators do not have to follow the procedures. The call concluded with Quillmann telling Foronda not to give Kerzetski any first-level grievance forms because he insisted on following the grievance procedures. According to the handwritten log attached as Exhibit 1 to the FAC, Kerzetski filed 23 first-level grievances after this conference. This all happened because warden Jeremy Bean did not adequately train and supervise his subordinates, and he failed to promulgate policies about inmate grievances.

**B. Claims**

Based on these allegations, Kerzetski sues Jeremy Bean, Frank Dreesen, William Kuloloia, Glen Fowler, S. Quillmann, James Dzurenda, Francisco Aguilar, and Aaron Ford. He brings nine claims and seeks declaratory, injunctive, and monetary relief. The FAC articulates that it brings claims under the First Amendment about retaliation, the right to petition the government for redress of grievances, and freedom of speech; under Nevada Constitution Article 1, § 9 about liberty of speech and retaliation; under the Fourteenth Amendment about procedural and substantive due process; and under Nevada Constitution Article 1, § 8 about retaliation.

**C. Analysis of claims**

Kerzetski alleges the defendants have a pattern and practice of using bogus procedural grounds to reject his grievances because he files lots of them to redress wrongs and harms. He contends this violates his rights under the First and Fourteenth Amendments. I provided Kerzetski with the legal standards governing his federal constitutional claims when I screened his original complaint, so I do not restate them here. *See generally* ECF No. 7.

**1. Kerzetski fails to state a colorable claim under the First Amendment.**

"The First Amendment guarantees a prisoner a right to seek redress of grievances from prison authorities and as well as a right of meaningful access to the courts." *Jones v. Williams*, 791 F.3d 1023, 1035 (9th Cir. 2015). "Retaliation against prisoners for their exercise of this right is itself a constitutional violation, and prohibited as a matter of clearly established law." *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009) (citation modified). Regarding access to the courts, there are no factual allegations that Kerzetski suffered an actual injury with respect to a contemplated or existing nonfrivolous direct criminal appeal, habeas corpus proceeding, or civil-rights action because prison officials rejected his grievances. *See Nasby v. Nevada*, 79 F.4th

1052, 1056 (9th Cir. 2023) (quoting *Bounds v. Smith*, 430 U.S. 817, 828 (1977)). This is Kerzetski's second attempt to state an access-to-courts claim and he has failed to do so. Additional leave to amend would be futile. So the First Amendment access-to-courts claims are dismissed without prejudice and without leave to amend.

Regarding retaliation, Kerzetski concludes the defendants rejected his grievances on pretextual grounds because he engaged in protected conduct—that is, he filed grievances to redress wrongs and harms. Kerzetski's recounting of his conversation with Quillmann and Foronda shows that it is possible that Quillmann rejected his grievances because he engaged in protected conduct. But without more, this allegation does not permit the reasonable inference that Quillmann had a retaliatory motive when she rejected them. *See Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (citation modified)). Kerzetski's conclusory statements that (1) his grievances always comply with procedures and (2) prison officials' denials are always pretextual does not move the needle on this claim from possible to plausible. And neither does his handwritten log of grievances that he contends were wrongly rejected at various levels. The problem is there are no factual allegations about the contents of any grievance and why it was rejected. Kerzetski instead offers only broad and general conclusions.

I warned Kerzetski when I dismissed this claim the first time that broad and vague allegations were not enough to show causation or retaliatory motive. ECF No. 7 at 8. This is Kerzetski's second attempt to state a retaliation claim and he has failed to do so. Additional leave to amend would be futile. So the First Amendment retaliation claims are dismissed without prejudice and without leave to amend.

**2. Kerzetski fails to state a claim under the Fourteenth Amendment.**

As I explained when screening Kerzetski's original complaint, ECF No. 7 at 4–5, because prisoners lack a protected liberty or property interest in the administrative grievance process, a prison official's rejection, denial, or refusal to accept or process an inmate's grievance does not state a cognizable substantive or procedural due-process claim even if the prisoner contends the official's act or omission was improper. *See, e.g., Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) (explaining "[t]here is no legitimate claim of entitlement to a grievance procedure" and holding the department of corrections' "unpublished policy statements create no protected liberty interest"); *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (holding inmates do not have a liberty interest in the processing of administrative appeals "because inmates lack a separate constitutional entitlement to a specific prison grievance procedure"). The Fourteenth Amendment substantive and procedural due-process claims are therefore dismissed with prejudice.

**3. Kerzetski's state-law claims are dismissed for lack of jurisdiction.**

What remains are Kerzetski's claims under the Nevada Constitution. This federal court lacks jurisdiction to consider these claims. "The Eleventh Amendment grants a State immunity from suit in federal court … by its own citizens …." *Walden v. Nevada*, 945 F.3d 1088, 1092 (9th Cir. 2019). "A State may waive its sovereign immunity at its pleasure, and in some circumstances Congress may abrogate it by appropriate legislation." *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 253–54 (2011) (citation modified). "But absent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State." *Id.* at 254.

In Nevada, "[n]o tort action arising out of an act or omission within the scope of a person's public duties or employment may be brought against any present or former" NDOC

officer or employee "unless the State or appropriate political subdivision is named a party defendant under NRS 41.031." Nev. Rev. Stat. § 41.0337(1). This means that for certain tort actions, the State of Nevada has conditioned its waiver of sovereign immunity on being named a party defendant. *See id.* So to sue NDOC officers or employees under state law in this action, NRS § 41.0337 requires Kerzetski to name the State of Nevada as a defendant. *See id.* But Kerzetski cannot do so in this federal lawsuit because the State of Nevada has not waived its Eleventh Amendment immunity from suit in federal court, and Congress has not abrogated state sovereign immunity for actions brought under 42 U.S.C. § 1983. *See O'Connor v. State of Nev.*, 686 F.2d 749, 750 (9th Cir. 1982); *see also Hirst v. Gertzen*, 676 F.2d 1252, 1264 (9th Cir. 1982) (holding that the federal court had no supplemental jurisdiction over the state claim if it had no jurisdiction over the state-law-created indispensable party).

## III. CONCLUSION

I THEREFORE ORDER that the application to proceed in forma pauperis (ECF No. 1) is granted. This status doesn't relieve the plaintiff of his obligation to pay the full $350 filing fee; it just means that he can do it in installments. And the full $350 filing fee remains due and owing even though this case is being dismissed.

I FURTHER ORDER that the Nevada Department of Corrections must pay to the Clerk of the United States District Court, District of Nevada, 20% of the preceding month's deposits to the account of **Brian C. Kerzetski, #1253192**, (in months that the account exceeds $10) until the full $350 filing fee has been paid for this action.

I FURTHER ORDER that the motion for leave to file a first amended complaint (ECF No. 8) is granted.

I FURTHER ORDER that the First Amendment access-to-courts and retaliation claims are dismissed without prejudice and without leave to amend.

I FURTHER ORDER that the Fourteenth Amendment procedural and substantive due-process claims about grievance procedures are dismissed with prejudice.

I FURTHER ORDER that the claims under the Nevada Constitution are dismissed for lack of jurisdiction and without prejudice to the plaintiff's ability to pursue them in state court.

The Clerk of Court is directed to (1) send a copy of this order to (a) the Finance Division of the Clerk's Office and (b) the attention of Chief of Inmate Services for the Nevada Department of Corrections at formapauperis@doc.nv.gov; and (2) enter judgment accordingly and close this case.

Dated: August 3, 2026

Andrew P. Gordon
Chief United States District Judge